## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE:                         ) | Bankruptcy Case No. 15 B 07325 |
|                         ) | |
| JAMES T. DRABIK,          ) | Chapter 7 |

IN RE:                                    )       Bankruptcy Case No. 15 B 07325
                                          )
JAMES T. DRABIK,                          )       Chapter 7
                                          )
                     Debtor.              )       Honorable Janet S. Baer
_____          )
                                          )
ESTATE OF ROSE M. DRABIK,                 )       Adversary Case No. 15 A 00866
MARY ELIZABETH SMITH,                     )
MARY KATHERINE PAUL, and                  )
BRENDA PORTER HELMS, not                  )
individually but as chapter 7 trustee for the )
bankruptcy estate of JAMES T. DRABIK,     )
                                          )
                     Plaintiffs,          )
                                          )
            v.                            )
                                          )
JAMES T. DRABIK,                          )
                                          )
                     Defendant.           )
_____          )

## MEMORANDUM OPINION

This matter is before the Court on the adversary complaint filed against James T. Drabik (the "Debtor") by plaintiffs Brenda Porter Helms, the chapter 7 trustee for the bankruptcy estate of the Debtor (the "Trustee"); the Estate of Rose M. Drabik (the "Estate"); and Mary Elizabeth Smith and Mary Katherine Paul, the executors of that Estate (collectively, the "Plaintiffs"). The Plaintiffs object to the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(4) of the Bankruptcy Code.[1] For the reasons outlined below, the Court finds in favor of the Plaintiffs and against the

---

[1] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

Debtor and holds that the Debtor is not entitled to a discharge under both statutory provisions of § 727(a).

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## BACKGROUND

The Debtor is the youngest of ten children of Rose Mary Drabik, who passed away on June 28, 2006. (Pl. Ex. 1 ¶ 4.[2])  At the time of the trial in this matter, the Debtor was a fifty-nine-year-old man who had been a self-employed independent contractor for many years and had earned income from repairing printing machines.  (Bankr. Dkt. No. 1; Adv. Dkt. No. 34, p. 9 ¶ 15; Tr. 109:11; D. Ex. I, p. 13.)  Plaintiffs Mary Elizabeth Smith and Mary Katherine Paul (the "Executors") are two of the Debtor's sisters and the independent executors of their mother's Estate.  (Pl. Ex. 1 ¶¶ 2 & 4.)

On October 8, 2007, the Estate, through the Executors, filed a three-count complaint against the Debtor for fraud, breach of unwritten contract, and unjust enrichment in the Circuit Court of Illinois, 18th Judicial Circuit, in DuPage County, Illinois (the "Circuit Court"), case no. 2007 L 1048 (the "Estate Case").  (Adv. Dkt. No. 34, p. 7 ¶ 4; Pl. Ex. 1 ¶¶ 2 & 4.)  In the Estate Case, the Executors alleged that, beginning in 1999 and continuing to his mother's death, the Debtor charged

---

[2] All references to the bankruptcy docket ("Bankr. Dkt.") are to Bankruptcy Case No. 15-07325, all references to the adversary docket ("Adv. Dkt.") are to Adversary Proceeding No. 15-00866, all references to exhibits admitted by the Court into evidence during the trial of this matter which took place on October 25, 2017 are to "Pl. Ex." for the Plaintiffs' exhibits and "D. Ex." for the Debtor's exhibits, and all transcript references ("Tr.") are to the transcript of the proceedings of October 25, 2017.

hundreds of thousands of dollars' worth of expenses on his mother's accounts for his own use and benefit and not for the benefit of his mother.  (Adv. Dkt. No. 34, p. 7 ¶ 5; Pl. Ex. 1 ¶ 7.)

On August 18, 2011, the Estate filed an amended complaint in the Estate Case, seeking, among other things, a money judgment against the Debtor for breach of unwritten contract.  (Adv. Dkt. No. 34, p. 8 ¶ 7.)  Specifically, the Executors sought repayment of money that their mother allegedly loaned to the Debtor during the last seven years of her life.  (Pl. Ex. 1 ¶ 2.)  A bench trial was held in the Estate Case from September 12 to 14, 2011.  (Adv. Dkt. No. 34, p. 8 ¶ 8; Pl. Ex. 1 ¶ 10).  Thereafter, on October 5, 2011, the Circuit Court entered a judgment in favor of the Debtor in the Estate Case, and an appeal followed.  (Adv. Dkt. No. 34, p. 8 ¶¶ 9 & 10.)

On March 18, 2014, the Illinois Appellate Court (the "Appellate Court") entered an order reversing the Circuit Court's judgment as to the breach of unwritten contract claim and remanded the case for further proceedings.  (Adv. Dkt. No. 34, p. 8 ¶ 11.)  In reaching its decision, the Appellate Court explained that the Circuit Court had erred in finding that funds given to the Debtor by his late mother were gifts rather than loans.  (Pl. Ex. 1 ¶¶ 1 & 75-79.)

On remand, the Circuit Court gave the parties an opportunity to submit additional written briefs in support of their positions and set the matter for decision on March 5, 2015.  (Pl. Ex. 2, p. 1.)  Subsequently, the Estate filed a motion for entry of judgment, as well as a reply.  (*Id.*)  The Debtor did not file a response.  (*Id.*)

On March 2, 2015, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code.  (Bankr. Dkt. No. 1.)  On March 5, 2015, the Circuit Court, after having reviewed its original memorandum opinion, the transcript from the trial it had conducted, the Appellate Court's ruling, the Estate's motion and reply, a recording of the closing arguments, the evidence admitted, and

3

relevant statutes and case law, issued its Memorandum Opinion. (Pl. Ex. 2, p. 1.) This time, the Circuit Court found in favor of the Estate and indicated that it would enter judgment on the breach of unwritten contract claim in the Estate's favor in the amount of: "$130,000 in repayment of credit card debt, $17,763 plus pre-judgment interest of $6,587.11 for repayment of the auto loan for a total of $154,350.11 plus costs." (Pl. Ex. 2, p. 12.) No judgment order was entered, however, due to the Debtor's chapter 7 filing. (Adv. Dkt. No 34, p. 9 ¶¶ 13 & 14.)

During the course of the Debtor's chapter 7 bankruptcy case, the Trustee conducted an initial 341 meeting (D. Ex. I), made written demands for documents (Pl. Ex. 3), conducted a second 341 meeting (D. Ex. II), and then continued the meeting four times (*see* Bankr. Dkt. Nos. 14, 25, 28, 39). The Estate served several 2004 subpoenas for documents on various parties (Pl. Ex. 4) and conducted a 2004 examination of the Debtor (D. Ex. III). The following key facts emerged from this extensive questioning and discovery, the results of which were subsequently introduced and admitted into evidence during the hearing on October 25, 2017:

- The Debtor has not filed income tax returns or paid income taxes since around 1996 (Adv. Dkt. No. 34, p. 11 ¶ 29; D. Ex. II, pp. 57-58; D. Ex. III, p. 15), despite his admission that he had income from employment in at least three years: $20,640 in 2012 (Pl. Ex. 5, p. 1; Bankr. Dkt. No. 55, p. 1); $43,544 in 2013 (Pl. Ex. 5, p. 2; Bankr. Dkt. No. 55, p. 1); and $52,980 in 2014 (Pl. Ex. 5, p. 3; Bankr. Dkt. No. 55, p. 1).

- The Debtor does not retain and in fact shreds all documents that contain his name or any other identifying information, including business documents, and has done so essentially all of his life. (Adv. Dkt. No. 34, p. 11 ¶ 30; D. Ex. III, pp. 14-15, 119-121; Tr. 21:18-20, 101:16-18, 103:15-104:2.)

- The lack of financial and business documents prevented the Debtor from providing a full and complete understanding of his financial affairs in the time period up to the filing of his chapter 7 petition. (Adv. Dkt. No. 34, p. 11 ¶ 31; Tr. 23:24-24:3.)

- The Debtor does not know whether the income listed in his statement of financial affairs is correct because he did not have records regarding that income at the time he filed his chapter 7 petition. (Adv. Dkt. No. 34, p. 11 ¶ 32; D. Ex. III, pp. 14-15, 24, 32-40.)

- The Debtor failed to list or otherwise disclose in his original statement of financial affairs his receipt of over $248,000 from the estate of his aunt, Lydia Tyler. (Adv. Dkt. No. 34, p. 12 ¶ 33; D. Ex. III, pp. 40-66, 69-75; Tr. 21:24-22:2, 105:1-106:9.)

- The Debtor did not disclose in his bankruptcy filings that he transferred/gifted $25,000 to a friend, and there was no writing that memorialized the transfer, other than two cancelled checks. (Adv. Dkt. No. 34, p. 12 ¶ 34; D. Ex. III, pp. 67-70; Tr. 22:12-17, 106:20-108:4.)

- The Debtor owned, transferred, gifted, and/or sold several firearms for which he has no records. (Adv. Dkt. No. 34, p. 12 ¶ 35; D. Ex. III, pp. 13-14, 85-119; Tr. 22:3-6, 23:15-18.)

- The Debtor did not list his 2015 income on his initial chapter 7 petition. (Tr. 22:7-11; D. Ex. III, pp. 10-11.)

- The Debtor did not list the Internal Revenue Service (the "IRS") or the Illinois Department of Revenue on his schedules, even though he knew that he had not filed or paid income tax for over twenty years and he was aware of at least one tax lien in the amount of $140,000. (Tr. 22:23-23:2.)

- The Debtor did not list Timothy Walsh as a creditor on his schedules despite testifying that he obtained an $8,000 loan from Walsh and transferred the title to his car to Walsh after he obtained the loan. (Tr. 23:3-14.) The Debtor also had no records relating to such loan. (D. Ex. III, pp. 20-21.)

- The Debtor did not disclose 2012 and 2013 income that he received from OEC Graphics or other potential sources. (Pl. Ex. 8; Tr. 23:19-20; D. Ex. III, pp. 34, 36-39, 77.)

On November 30, 2015, the Plaintiffs filed the adversary complaint at issue here pursuant to § 727 of the Bankruptcy Code. In Count I of the complaint, the Plaintiffs allege that the Debtor should be denied a discharge pursuant to § 727(a)(3) because he unlawfully concealed, destroyed, mutilated, falsified, or failed to keep or preserve information, books, documents, or records from

which his financial condition might be ascertained.  In Count II, the Plaintiffs allege that the Debtor should be denied a discharge pursuant to § 727(a)(4) because he made a false oath or account, presented or used a false claim, and knowingly failed to produce documents to which the Trustee is entitled under the Code.  (Adv. Dkt. No. 1.)

On December 17, 2015, over nine months after the Debtor filed his chapter 7 petition and after extensive questioning by his creditors and the Trustee, the issuance of document subpoenas, two 341 meetings, one 2004 examination, and the filing of the instant adversary complaint, the Debtor filed amended schedules B and C and an amended statement of financial affairs to address some of the issues outlined above.  (Bankr. Dkt. Nos. 54 & 55.)

On  December 31, 2015, the Debtor, through counsel, filed his answer to the adversary complaint, denying that he violated §§ 727(a)(3) and (a)(4).  (Adv. Dkt. No. 6.)  Thereafter, further discovery was conducted, and the adversary complaint was continued several times.  On April 28, 2017, about seventeen months after the adversary proceeding had been filed, the Debtor's attorney filed a motion to withdraw as counsel.  (Adv. Dkt. No. 25.)  In that motion, counsel indicated that the "Debtor/Defendant [was] not cooperating with his attorney both because he ha[d] not timely paid the applicable attorney fees . . . and because he ha[d] not reasonably cooperated with [counsel] in seeking to avoid future costly litigation."  (*Id.* at ¶ 2.)  Counsel also stated that he was in the process of retiring from the practice of law.  (*Id.* at ¶ 3.)  The Debtor did not object to the motion to withdraw, and on May 11, 2017, the Court entered an order granting the motion and giving the Debtor twenty-one days to retain substitute counsel.  (Adv. Dkt. No. 27.)

At the status hearing on June 21, 2017, the Debtor reported that he had not retained new counsel because he had no money to do so.  The Court explained to the Debtor the serious nature of

6

the allegations in the adversary complaint, told him how important it was to be represented by an attorney, and gave him additional time, once again, to retain counsel. (*See* Tr. 93:4-12.)

On August 11, 2017, when the matter was next before the Court, the Debtor again stated that he had not been able to get an attorney. The Court reiterated the seriousness of the allegations and the importance of retaining counsel but indicated that the proceeding had been pending for almost two years and had to move forward to completion. To that aim, the Court entered a final pre-trial order, which set October 18, 2017 as the date by which the joint pre-trial statement was due and scheduled the trial for October 25, 2017. The Court explained to the Debtor that if he did not retain counsel for the trial, he would have to represent himself in a *pro se* capacity at the hearing. (*See* Tr. 93:13-94:1.)

A joint pre-trial statement was filed by the parties on October 19, 2017. (Adv. Dkt. No. 34.) Two binders of documents were submitted as potential exhibits for the trial by the Plaintiffs. One binder was submitted by the Plaintiffs, at the Debtor's request, as the Debtor's exhibits.

The case proceeded to trial on October 25, 2017, at which the Debtor represented himself and the Plaintiffs were represented by counsel. Both parties made opening statements. (Tr. 11-15.) The Plaintiffs, through counsel, called one witness, the Trustee, and had eleven exhibits admitted into evidence. (Tr. 19:12-68:4.) The Debtor then cross-examined the Trustee. (Tr. 68:7-79:19.) Thereafter, the Plaintiffs rested their case, and the Debtor put on his case. He first moved for admission of his four exhibits: two transcripts of his 341 meetings, the transcript of his 2004 examination which took place on November 18, 2015, and an email message from October 11, 2017 related to the joint pre-trial statement. (Tr. 88:13-96:3.) All four exhibits were admitted into evidence. The Debtor then testified on his own behalf through an offer of proof. The Court asked

7

several questions of the Debtor, but the Plaintiffs had no questions on cross-examination. (Tr. 96:25-111:18.) Finally, the parties both made closing statements (Tr. 112:20-120:8), and the matter was taken under advisement.

Having reviewed all of the evidence admitted at trial, the transcript of the proceedings, the arguments of the parties, and the applicable law, the Court is now ready to rule.

## DISCUSSION

The Plaintiffs seek denial of the Debtor's discharge under § 727(a) of the Bankruptcy Code. Section 727(a) requires denial of a discharge to a debtor who has been unscrupulous in various ways. The bankruptcy system is designed to help the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991) (internal quotation omitted). Consequently, no discharge is available to the debtor who has been "less than honest." *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). Although the denial of a discharge is a "drastic" remedy, *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 359 (Bankr. N.D. Ill. 2002), *aff'd*, 2003 WL 403138 (N.D. Ill. Feb. 20, 2003), a discharge in bankruptcy is a privilege, not a right, *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966 (7th Cir. 1999). A debtor who has not been honest and forthcoming–particularly in connection with the bankruptcy itself–does not deserve that privilege. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996).

Obtaining a discharge, of course, is the primary aim of the "fresh start" that bankruptcy is designed to give debtors. *Gasunas v. Yotis (In re Yotis)*, 548 B.R. 485, 494-95 (Bankr. N.D. Ill. 2016). Accordingly, objections to discharge are construed strictly against creditors and liberally in favor of the debtor. *Sullivan v. Ratz*, No. 12 C 5819, 2016 WL 379729, at *9 (N.D. Ill. Jan. 27, 2016). A creditor seeking an order denying a debtor a discharge bears the burden of proving each

8

of the elements of the applicable claim by a preponderance of the evidence. *Scott*, 172 F.3d at 966-67; *Muhammad v. Reed (In re Reed)*, 542 B.R. 808, 823 (Bankr. N.D. Ill. 2015).

In this adversary proceeding, the Plaintiffs argue that the Debtor should be denied a discharge pursuant to §§ 727(a)(3) and (a)(4). The Court will address each statutory provision in turn.

### Section 727(a)(3)

The obligation to keep and preserve records reflecting a debtor's financial condition is imposed by § 727(a)(3). It provides that a discharge shall be denied if a debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]" 11 U.S.C. § 727(a)(3). Intent to defraud is not an element under this statutory provision. *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 896-97 (Bankr. N.D. Ill. 2003).

Section 727(a)(3) ensures that a debtor will provide "enough information to ascertain [his] financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002) (internal quotation omitted). Accordingly, a debtor must maintain and preserve records of his financial affairs. *Id.* Although records need not be kept in any particular manner, they must be sufficient to provide "a true presentation of the debtor's financial affairs." *Schechter v. Hansen (In re Hansen)*, 325 B.R. 746, 761 (Bankr. N.D. Ill. 2005) (internal quotation omitted). Neither the Court nor creditors have an obligation "to reconstruct a debtor's financial situation," *Union Planters*

9

*Bank*, 283 F.3d at 899, nor are they required, "in the absence of adequate records, to take a debtor's word for his financial dealings," *Hansen*, 325 B.R. at 761.

In this matter, the Plaintiffs have the initial burden of establishing inadequacy of the Debtor's records. *See Costello*, 299 B.R. at 897. Adequacy is determined on a case-by-case basis. *Hansen*, 325 B.R. at 761-62. Among the factors that a court should consider in making that decision are the size, complexity, and nature of the debtor's business; the debtor's education and sophistication; his business experience; and his "personal financial structure." *Id.* at 762 (internal quotation omitted). Records are adequate if they "permit the court and creditors to trace the debtor's financial dealings." *Neugebauer v. Senese (In re Senese)*, 245 B.R. 565, 576 (Bankr. N.D. Ill. 2000). If the Plaintiffs are able to establish inadequacy of the Debtor's records, then the burden shifts to the Debtor to show that his failure to keep or preserve records was "justified under all of the circumstances of the case[.]" *See* 11 U.S.C. § 727(a)(3); *see also Costello*, 299 B.R. at 897.

The Court acknowledges that § 727(a)(3) is generally not used to bar the discharge of "an ordinary consumer debtor." *Hansen*, 325 B.R. at 762. Thus, in most cases, "holes in a consumer debtor's financial records will not be enough to invoke" § 727(a)(3). *Id.* This case does not, however, involve an ordinary consumer debtor, and the gaps in the Debtor's financial records are not merely "holes."

The Debtor here is a self-employed individual who has been supporting himself for years though the operation of his own printer repair business. His income from that business in the three years for which records were ultimately obtained by the Trustee ranged from just over $20,000 to almost $53,000. In addition, the Debtor inherited more than $248,000 for which he has no records. In fact, the Debtor has essentially *no* records of *any* kind related to his financial situation. In both

10

his written submissions and his testimony at trial, the Debtor acknowledged that he shreds virtually all documents on which his name and address appear and said that he has done so for most of his life. He also admitted that he has not filed or paid taxes since 1996. How the Debtor has managed to earn income, not file or pay taxes, and continue to avoid any kind of prosecution for his failure to do so for over twenty years is astonishing. That ability to skirt by stops here.

In addition to the Debtor's own admissions regarding his failure to preserve recorded information from which his financial condition can be determined, the Trustee's testimony at trial was particularly compelling. Specifically, the Trustee testified that the Debtor was neither forthright nor forthcoming in connection with his disclosures to the Court. She concluded that, because of the lack of information provided, she could not ascertain the Debtor's financial condition leading up to the filing of the bankruptcy case and, thus, was unable to determine whether he was entitled to a chapter 7 discharge. (Tr. 23:23-24:3.) The Trustee also testified that the only way she was able to obtain any information about the Debtor's financial condition was through the issuance of Rule 2004 subpoenas. The Trustee is not required to issue subpoenas and go after information in order to reconstruct the Debtor's financial situation; it is the Debtor's duty to preserve financial information and provide it to the Trustee.

Given the documentary evidence and the testimony at trial, the Court finds that the Debtor's records are inadequate to ascertain the Debtor's financial condition or allow the Court, the Trustee, and the Debtor's creditors to trace his financial dealings with any kind of accuracy. The Debtor has not offered any reasonable justification for his failure to keep or preserve financial records. And, other than a few documents that he gave the Trustee at the second 341 meeting, he essentially had no records at all.

11

Based on the foregoing, the Court finds that the Plaintiffs have met their burden of establishing inadequacy of the Debtor's records and that the Debtor has not shown that his failure to preserve records was justified under the circumstances of the case. Accordingly, the Debtor's failure to keep or preserve records supports denial of his discharge under § 727(a)(3).

### Section 727(a)(4)

The Plaintiffs also object to the Debtor's discharge pursuant to § 727(a)(4). Specifically, the Plaintiffs allege that the Debtor is not entitled to a discharge under § 727(a)(4)(A) because he "made a false oath or account" by providing false, misleading, or inaccurate information on his initial chapter 7 petition, schedules, and statement of financial affairs.[3]

Section 727(a)(4)(A) enforces the debtor's obligation to provide full and accurate information about himself and his affairs by denying a discharge to a debtor who has "knowingly and fraudulently, in or in connection with the case[,] . . . made a false oath or account[.]" 11 U.S.C. § 727(a)(4)(A); *Bostrom*, 286 B.R. at 359. Indeed, to get a "fresh start" under the Code, a debtor must "accurately and truthfully present [himself] before the Court." *Bostrom*, 286 B.R. at 359. "All assets

---

[3] The Plaintiffs also assert that the Debtor is not entitled to discharge under §§ 727(a)(4)(B) and (a)(4)(D), which provide for denial of discharge if a debtor "knowingly and fraudulently. . . (B) presented or used a false claim; . . . or (D) withheld from an officer of the estate entitled to possession under [the Code] any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]" 11 U.S.C. §§ 727(a)(4)(B) & (a)(4)(D). Although they invoke these statutory provisions in the complaint, the Plaintiffs do so only in the most general way, without discussing the elements required under each or their applicability here.

In any event, neither of the two provisions supports the Plaintiffs' objection to the Debtor's discharge. With respect to § 727(a)(4)(B), the Plaintiffs provide no argument or evidence that the Debtor scheduled non-existent debts, inflated the amount of debts, filed false proofs of claim, or engaged in any other conduct to establish that he "presented or used a false claim." *See Crowder v. Wilbur (In re Wilbur)*, 574 B.R. 782, 798 (Bankr. N.D. Ga. 2017). In fact, "[v]ery few cases have ever arisen under" § 727(a)(4)(B). 6 *Collier on Bankruptcy* ¶ 727.05 (Richard Levin & Henry J. Sommer eds., 16th ed.). As to § 727(a)(4)(D), although the Court found above that the Debtor failed to keep or preserve recorded information from which his financial condition could be ascertained, the evidence does not conclusively establish that he knowingly and fraudulently withheld that information from the Trustee.

In contrast, as the Court discusses below, the evidence here emphatically supports the Plaintiffs' claim that the Debtor made "a false oath or account" and that, thus, his discharge should be denied under § 727(a)(4)(A). Accordingly, the Court will confine its analysis to that statutory provision.

12

and ownership interests must be disclosed, and all questions in the schedules and statement of financial affairs must be answered completely and honestly." *Hansen*, 325 B.R. at 757. The trustee and creditors are entitled to information that will permit them to evaluate the case. *Costello*, 299 B.R. at 899. "The very integrity of the bankruptcy court and the successful administration of the bankruptcy system rest upon compliance with the debtor's obligation of disclosure." *Urological Grp., Ltd. v. Petersen (In re Petersen)*, 296 B.R. 766, 790 (Bankr. C.D. Ill. 2003).

To prevail under § 727(a)(4)(A), the Plaintiffs must demonstrate that: (1) the Debtor made a statement under oath; (2) the statement was material to the bankruptcy case; (3) the statement was false; (4) the Debtor knew that the statement was false; and (5) the statement was made with an intent to deceive. *See Hansen*, 325 B.R. at 758. Applying the facts in this matter to the elements of § 727(a)(4)(A), the Court finds that the Plaintiffs have satisfied all five.

First, the Debtor made statements under oath, because a bankruptcy petition, schedules, and a statement of financial affairs all constitute statements under oath for purposes of § 727(a)(4)(A). *Neary v. Mosher (In re Mosher)*, 417 B.R. 772, 781 (Bankr. N.D. Ill. 2009); *Norton v. Cole (In re Cole)*, 378 B.R. 215, 221 (Bankr. N.D. Ill. 2007); *Senese*, 245 B.R. at 574.

Second, all of the information provided by the Debtor on his petition, schedules, and statements concerned his financial affairs and is therefore material to the bankruptcy case. *See Senese*, 245 B.R. at 574.

As to the third and fourth elements, many of the statements in the Debtor's initial filings were false, and he knew that they were false. The Debtor himself admitted, for example, that he did not know whether the income figures listed in his statement of financial affairs were accurate because he did not have records to substantiate those figures when he filed his petition. The Debtor also

13

failed to include in his original statement of financial affairs the receipt of a sizeable inheritance from his aunt's estate, nor did he disclose income that he received over two years from a graphics company. Additionally, the Debtor did not disclose that he transferred $25,000 to a friend within two years of the filing of his bankruptcy petition. He did not list Timothy Walsh as a creditor on his schedules despite his testimony that he had obtained a substantial loan from Walsh. And although he knew of a considerable tax lien, he failed to list the IRS or the Illinois Department of Revenue on his schedules. These and other omissions and inaccuracies, and the Debtor's knowledge of them, amply satisfy elements three and four.

The final element—"intent to deceive"—has also been met. It is well established that for a debtor to have the intent to bar his discharge under § 727(a)(4)(A), he must have either knowingly intended to defraud or "engaged in such reckless behavior as to justify the finding of fraud." *In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992) (discussing the intent requirement in the context of discharge revocation). Sometimes described as "reckless indifference," *see, e.g., Senese*, 245 B.R. at 575, reckless disregard is "the state of mind present when a debtor does not care about the truth or falsity" of a statement or situation. *Neary v. Stamat (In re Stamat)*, 395 B.R. 59, 71 (Bankr. N.D. Ill. 2008), *aff'd,* 2009 WL 2916834 (N.D. Ill. Sept. 2, 2009), *aff'd*, 635 F.3d 974 (7th Cir. 2011). In deciding whether a debtor has acted with intent to defraud for purposes of § 727, the court should consider the debtor's "whole pattern of conduct." *Richardson v. Clarke (In re Clarke)*, 332 B.R. 865, 870 (Bankr. C.D. Ill. 2005) (internal quotation omitted).

In this case, the Debtor's conduct is a classic example of "reckless indifference." Both the documentary evidence and the testimony at trial overwhelmingly demonstrated that the Debtor has been indifferent as to all financial matters throughout his entire adult life. He has not cared about

14

the truth or falsity of statements or situations associated with those from whom he gets money, those to whom he owes money, whether he is getting or receiving gifts or loans, how much he earns, what records he keeps or destroys, and whether he files or pays his taxes.

Even considered separately, some of the Debtor's knowing misrepresentations–such as the omission from his statements of the $248,000 inheritance and his failure to list the IRS and Illinois Department of Revenue as creditors, despite not having filed taxes for over twenty years–are serious and significant and could warrant a denial of discharge on their own. *See Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 745 (Bankr. N.D. Ill. 2004) (explaining that a single misstatement that is not "particularly serious" would be insufficient to support an objection to discharge); *see also Sullivan v. Bieniek (In re Bieniek)*, 417 B.R. 133, 138 (Bankr. D. Minn. 2009) (stating that courts are "'often understanding of a single omission or error resulting from an innocent mistake'"); *but see Smith v. Grondin (In re Grondin)*, 232 B.R. 274, 277 (B.A.P. 1st Cir. 1999) (finding that "all that is required for a denial of discharge is a single 'false oath or account'" under § 727(a)(4)(A)). Without question, all of the Debtor's misstatements and omissions here, examined together, establish a pattern of reckless indifference to the truth and the responsibilities of debtors to provide truthful, accurate, and adequate information.

Finally, the Court acknowledges that the Debtor filed amendments in an attempt to remedy some of the misrepresentations and omissions on his schedules and statement of financial affairs. A debtor may not excise a false oath, however, by making subsequent corrections to his bankruptcy petition. *Costello*, 299 B.R. at 899-900. "Allowing a debtor to submit false schedules and then, on discovery, avoid the negative consequences of his dishonestly by amending those schedules is contrary to the spirit of the law which aims to relieve honest debtors only." *Id.* at 900 (internal

15

quotation omitted).  The bankruptcy system relies on honest reporting.  "If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive."  *Id.* (internal quotation omitted).  Thus, the fact that the Debtor corrected some of his errors does not excuse him from initially filing significantly deficient and inaccurate documents.

In sum, the Court finds that the Plaintiffs have established all of the elements required under § 727(a)(4)(A).  Accordingly, the Debtor is not entitled to a discharge under that statutory provision, and his discharge will be denied.

### CONCLUSION

For the forgoing reasons, the Court finds in favor of the Plaintiffs and against the Debtor on both Counts I and II of the adversary complaint.  As such, the Debtor's discharge will be denied pursuant to §§ 727(a)(3) and (a)(4)(A).  A separate order will be entered consistent with this Memorandum Opinion.

Dated: **February 7, 2018**                    ENTERED:

Janet S. Baer
United States Bankruptcy Judge